**Lee BERGMEYER, Appellant,**

v.

**QUEEN'S SUPERMARKETS,
Respondent.**

No. 65101.

Missouri Court of Appeals,
Eastern District,
Division One.

June 7, 1994.

Robert G. Kister, Festus, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Vicky L. Anthony, Asst. Atty. Gen., Cape Girardeau, for respondent.

CRIST, Judge.

Claimant, Lee Bergmeyer, appeals from the decision of the Labor and Industrial Relations Commission (Commission) denying his claim for workers' compensation benefits from the Second Injury Fund. We affirm this denial.

On April 9, 1991, Claimant filed a claim for workers' compensation benefits from his previous employer, Queen's Supermarkets (Employer), for occupational disease of multiple nerve entrapment and carpal tunnel syndrome. He subsequently amended this claim twice to include claims against the Second Injury Fund. His final amended claim against the Second Injury Fund listed previous injuries occurring in 1972, 1976 and 1976–1987 of "low back; hypertension, abdominal scarring, cervical osteoarthritis—shoulders bilaterally; gastric & digestive disorders, acute diverticulitis, liver impairment & congesti[ve] heart failure; chronic alcoholism and its effects."

On January 21, 1993, a hearing was held on his claim against Employer and the Second Injury Fund before an Administrative Law Judge (ALJ). Claimant testified he had been employed in the retail sale of groceries for 44 years. In 1988, he began working for Employer at three different stores. Regarding his previous disabilities, Claimant stated he had back problems in the early 70s. At that time a myelogram was performed, but no abnormalities were observed and no surgery was necessary. Claimant continued to have back pain once every month to month-and-a-half. He took aspirin for the pain. He continued to work without missing any time but avoided heavy lifting.

In addition, Claimant had preexisting digestive problems, including diverticulitis. Claimant testified working did not aggravate his digestive problems, and he continued doing all the duties of his job until May of 1990. He further stated the pain associated with the diverticulitis did interfere to some extent with his ability to perform his duties. Claimant did not testify whether any of his other preexisting disabilities ever affected his ability to work.

On April 30, 1993, the ALJ issued his findings of fact and conclusions of law. The ALJ found Claimant had suffered an occupational disease and ordered Employer to pay Claimant $32,222.45 in permanent partial disability and temporary total disability. In addition, the ALJ found no liability on the part of the Second Injury Fund because Claimant had failed to establish he was suffering from an industrially disabling permanent partial disability prior to his primary injuries of May 1990. The ALJ stated:

While the record is replete with medical records documenting various disabilities suffered by the claimant, it is not apparent that any of these conditions were of sufficient severity in May of 1990 to significantly hinder claimant's ability to work. Mr. Bergmeyer acknowledged that he was working 50 hours per week, performing all of the duties of his job. Mr. Bergmeyer further acknowledged that prior to May of 1990 he was under no work restrictions from his doctor.

Claimant appealed the denial of Second Injury Fund liability to the Commission. Employer also appealed the award of workers' compensation benefits. On November 5, 1993, the Commission issued its final award affirming the ALJ's award of workers' compensation benefits from Employer and denial of benefits from the Second Injury Fund and adopting the ALJ's findings of fact and conclusions of law. Claimant appeals.

■ Claimant's sole point on appeal challenges the Commission's conclusion that he did not have any preexisting industrial disability.

■ Our review of the Commission's decision is limited to questions of law. § 287.-495.1, RSMo 1986. We may reverse the Commission's findings only upon finding:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

*Id.* In reviewing the record, we examine the evidence in the light most favorable to the finding, disregarding evidence which might support findings different than those found by the Commission. *Saidawi v. Giovanni's Little Place,* 805 S.W.2d 180, 182[2] (Mo.App. 1990).

Second Injury Fund liability is predicated upon Claimant proving he had a permanent

partial disability preexisting the present occupational disease. § 287.220, RSMo.Supp. 1993; *Carron v. Ste. Genevieve School Dist.,* 800 S.W.2d 64, 68[7] (Mo.App.1990). This preexisting permanent partial disability has been defined as an "industrial disability," one which adversely affects a claimant's ability to work or earning capacity, rather than physical impairment. *Wilhite v. Hurd,* 411 S.W.2d 72, 77[3] (Mo.1967); *Reiner v. Treasurer of State of Mo.,* 837 S.W.2d 363, 366[3] (Mo.App.1992).

■ Over the years, in addressing the issue of industrial disability, the courts have generally looked to "whether the preexisting condition caused claimant to miss a considerable amount of work; made claimant's work dangerous; prevented claimant from performing his previous duties; or resulted in claimant working less or only working part-time." *Shipp v. National Vendors,* 862 S.W.2d 344, 346 (Mo.App.1993) and cases cited therein.

Claimant points to the following evidence he believes shows he has an industrial disability: First, Robert Rainey, M.D., testified Claimant had preexisting permanent partial disabilities of: (1) 15%—lower back; (2) 10%—cervical spine; (3) 30%—hypertension; (4) 50%—digestive disorders; and (5) 20%—chronic alcoholism. Second, Claimant testified his back pain affected his ability to perform his job, and he would avoid heavy lifting at his job. He also stated his digestive problems interfered to some extent with his ability to perform his duties at his places of employment. Claimant contends the above evidence was uncontradicted and shows his earning capacity was impaired and therefore, warrants a reversal of the Commission's denial of Second Injury Fund benefits.

In support of his contention, Claimant relies upon *Stoddard v. Wilson Freight, Inc.,* 651 S.W.2d 152 (Mo.App.1983); and *Carroll v. Loy–Lange Box Co.,* 829 S.W.2d 86 (Mo.App.1992). In *Stoddard,* the appellate court affirmed the Commission's finding an employee suffered from a preexisting industrial disability because of a prior motorcycle accident which had shortened the employee's leg, limiting his range of motion in his hip and causing him to limp. *Stoddard,* 651 S.W.2d at 158. The court did so even though the evidence showed the employee returned to his prior duties of driving a truck at the same wage rate as before, without missing any work as a truck driver. *Id.* at 158[8]. The court stated employee's claim was not defeated because he lost no earnings, but rather "[h]is case was made if he showed a loss of earning *power* or earning *capacity.*" *Id.* The court further stated:

Here was a perceptible loss of agility and a perceptible loss of mobility and flexibility, which could only decrease his earning *power* or earning *capacity* and the Commission's finding to that effect is amply supported by the evidence. The range of types of jobs which he could perform was much narrowed by the earlier injury.

*Id.* Finally, the court relied upon language in *Meilves v. Morris,* 422 S.W.2d 335, 338–339 (Mo.1968) which found an industrial disability exists where a claimant is prevented from performing any part of the usual and customary duties of his or her occupation or any other occupation for which he or she is reasonably suited. *Stoddard,* 651 S.W.2d at 158.

In *Carroll,* the employee had a prior work-related injury to his left knee which required surgery. *Carroll,* 829 S.W.2d at 87. The appellate court affirmed the Commission's award of benefits from the Second Injury Fund where the employee had stated he was not one hundred percent after his earlier injury, and his medical expert had testified employee had a 10% preexisting disability to his left leg. *Id.* at 88[3]. In so doing, the appellate court specifically noted its limited standard of appellate review and the Commission's sole power to resolve conflicts in the evidence and judge witness credibility. *Id.* The court further relied extensively upon the *Stoddard* case. *Id.* at 89.

We find both *Stoddard* and *Carroll,* relying upon *Stoddard,* to be distinguishable from the case at hand. Both cases, in accordance with the limited standard of appellate review, affirmed Commission findings. *See also, Bone v. Daniel Hamm Drayage Company,* 449 S.W.2d 169, 173 (Mo.1970) (emphasizing limited appellate review of Commission's finding of industrial disability). In

contrast, Claimant's case involves a Commission finding of no industrial disability and Claimant is asking this court to find one exists. This we cannot do. The facts cited by Claimant are insufficient to warrant a *reversal* of the Commission's findings. The evidence to which Claimant points as supporting a finding of industrial disability is insufficient to reverse the Commission when compared with Claimant's ability to return to work and resume his normal retail grocery duties in 50–hour work weeks. *See, e.g., Carron,* 800 S.W.2d at 68[8] (appellate court affirms Commission's finding of no industrial disability where employee able to perform strenuous labor daily and strenuous janitorial duties); *Jones v. Jefferson City School Dist.,* 801 S.W.2d 486, 489[6] (Mo.App.1990) (employee's failure to miss work after prior back injury supported Commission's finding of no industrial disability); *Roby v. Tarlton Corp.,* 728 S.W.2d 586, 588–89[2] (Mo.App.1987) (appellate court affirms finding that employee's prior mental impairment did not constitute industrial disability where no hindrance to ability to work or capacity to earn a living).

In addition, both *Stoddard* and *Carroll* found Second Injury Fund liability where it characterized the preexisting disability as an industrial disability which when combined with the present injury resulted in permanent total disability. *Stoddard,* 651 S.W.2d at 156; *Carroll,* 829 S.W.2d at 87; *See also, Roby,* 728 S.W.2d at 588–89. In the case at hand, the combination of injuries did not result in Claimant's permanent and total disability.

Judgment of Commission affirmed.

CRANDALL, P.J., and REINHARD, J., concur.