**Gerald GORDON, Appellant,**

v.

**CITY OF ELLISVILLE,**

and

**Treasurer of the State of Missouri as Custodian of Second Injury Fund, Respondents.**

**No. ED 91097.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 28, 2008.

James C. Ochs, Stephen P. Dowil, Clayton, MO, for appellant.

Margaret Mary Hecht, Saint Louis, MO, for respondents.

## *OPINION*

GLENN A. NORTON, Judge.

Gerald Gordon ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying him benefits after he was injured while employed as a public works maintenance worker for the City of Ellisville ("Employer"). We affirm.[1]

## I. BACKGROUND

On October 21, 2005, Claimant was in the process of climbing out of a tub grinder at work when he slipped and fell on his right arm with his arm extended. Claimant reported the injury to Employer and went to the emergency room. After tak-

ing x-rays, the hospital staff told him to put ice on his shoulder and to see Employer's doctor. Employer's doctor recommended physical therapy, but when the therapy exacerbated his pain, Claimant went to see Dr. Richard Lehman, an orthopedic surgeon. Dr. Lehman performed an MRI, revealing a massive rotator cuff tear. Dr. Lehman then scheduled Claimant for surgery.

On November 7, 2005, Dr. Lehman performed surgery on Claimant's right shoulder. Following surgery, Claimant participated in physical therapy until he was released to work on March 14, 2006, with no restrictions.

Claimant filed a claim for worker's compensation for the period of time from the date of his work accident until March 14, 2006. According to the record, the parties stipulated, among other issues, that Claimant sustained an accidental injury arising out of and in the course of employment. The issues left for resolution were: (1) medical causation with respect to Claimant's need for surgery and his post-operative treatment; (2) whether he was entitled to temporary total disability benefits for the October 2005 to March 2006 time period; and (3) the nature and extent of any permanent partial disability he sustained.

At the hearing, Claimant testified about the circumstances of his work accident and the difficulties he continues to experience using his arm. He also spoke about a shoulder injury he sustained in 1993. In March of that year, Claimant underwent an open right rotator cuff repair. According to Claimant, after the 1993 surgery he was 99.5% back to normal and had no difficulties performing the labor required

---

1. Claimant makes no claims against the Second Injury Fund in this appeal. The Second Injury Fund did not file a respondent's brief.

for his job. He could also play softball, bowl and golf without problems with respect to his right arm. However, Claimant stated that since his 2005 injury, he can no longer play sports and needs assistance to compensate for pain in his arm when performing work duties.

Claimant called Dr. Robert Poetz to testify on his behalf by deposition. Dr. Poetz is an osteopathic doctor who practices family medicine but does not perform orthopedic surgery. Dr. Poetz examined Claimant in August 2006 and reviewed his medical records and patient history. Based on his observations and review, Dr. Poetz diagnosed Claimant's medical condition as a right rotator cuff tear from the 1993 injury. He further diagnosed a massive irreparable right rotator cuff tear, a tear to the muscle that stabilizes the shoulder joint as part of the rotator cuff (a subscapularis tear), and shoulder pain when Claimant raised his right arm (impingement syndrome) as a result of the October 2005 injury. He concluded that Dr. Lehman's surgical procedures were necessary because of Claimant's October 2005 injury.

Dr. Poetz opined that Claimant suffered a 55% permanent partial disability to the upper right extremity as measured at the right shoulder directly resulting from the October 2005 injury. In addition, he testified that the October 2005 accident was a substantial and prevailing factor in causing the 55% permanent partial disability to Claimant's right shoulder.

Employer presented the deposition testimony of Dr. Lehman. Dr. Lehman first examined Claimant in November 2005. He took a patient history, which included Claimant's October 2005 injury and his 1993 injury. Dr. Lehman stated that although he believed Claimant's rotator cuff tear was a result of the October 2005 work accident prior to performing surgery, he came to a different conclusion after observing Claimant's shoulder during surgery.

According to Dr. Lehman, when he operated on Claimant's shoulder, he expected to see a re-tear of Claimant's previous rotator cuff repair, but instead found no evidence of any good rotator cuff tissue. Dr. Lehman also noticed chronic changes in Claimant's joint that appeared to be long-term in nature. Because Dr. Lehman found no evidence of any good rotator cuff tissue and no acute changes, he concluded that Claimant's October 2005 work accident was not the prevailing factor in causing his need for surgery. He diagnosed Claimant's 2005 work accident as a strain of the right shoulder causing inflammation and found that the strain had no effect on Claimant's rotator cuff. Dr. Lehman concluded that Claimant did not have a disability as a result of the October 2005 work accident.

The Commission, in a two-to-one decision, adopted the Administrative Law Judge's ("ALJ") findings and conclusions that Claimant was not entitled to benefits. In her findings and conclusions, the ALJ specifically found Dr. Lehman's testimony to be "more persuasive" than that of Dr. Poetz because: (1) Dr. Poetz is a family doctor who does not perform shoulder surgeries, while Dr. Lehman is a board-certified orthopedic surgeon who devotes 40% of his practice to shoulder surgery; (2) Dr. Lehman actually performed the surgery on Claimant and viewed the damage to Claimant's shoulder; and (3) while Dr. Lehman gave clear and cogent explanations as to how he arrived at his expert opinion, Dr. Poetz did not reconcile his conclusion that Claimant's injury was the prevailing factor in causing his rotator cuff tear with the arthroscopic findings and did not show any acute injury. Based on Dr. Lehman's testimony, the ALJ found that the injury Claimant suffered from his work accident

was not the prevailing factor in causing his rotator cuff tear.

Claimant filed this appeal of the Commission's decision to deny benefits.

## II.  DISCUSSION

### A.  Standard of Review

Section 287.495 RSMo 2000[2] provides the grounds for setting aside the Commission's decision with respect to claims raised under the Worker's Compensation Law. Specifically, it states that this Court:

shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1.

We are not required to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). Instead, we consider the whole record to determine whether sufficient competent and substantial evidence supports the award. *Id.* "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* The Commission is charged with passing upon the credibility of witnesses, and it may disbelieve testimony of a witness even though no contradictory or impeaching evidence is presented. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 470 (Mo.App. S.D.1992) (citations omitted), *overruled on other grounds by Hampton*, 121 S.W.3d at 223.

### B.  The Commission's Decision to Deny Benefits Was Supported by Competent and Substantial Evidence and Was Not Against the Overwhelming Weight of the Evidence

Claimant raises two points on appeal. Although the arguments are distinct, Claimant essentially argues in both points that the Commission's decision to deny benefits was not supported by competent and substantial evidence and was against the overwhelming weight of the evidence.

#### 1.  This Court Must Apply the "Prevailing Factor" Standard

Claimant argues in his first point that the Commission's decision was not supported by competent and substantial evidence and was against the overwhelming weight of the evidence because the Commission found that Claimant sustained an injury to his shoulder as a result of the 2005 work accident, yet failed to award compensation. In particular, Claimant argues that the Commission's finding supports an award of compensation since he sufficiently proved that the 2005 work accident aggravated his pre-existing shoulder injury.

Section 287.120 RSMo Supp.2006[3] requires employers to furnish compensation according to the provisions of the Worker's Compensation Law for personal injuries of

---

2.  Unless otherwise indicated, all statutory references are to RSMo 2000.

3.  All references to Section 287.120 are to RSMo Supp.2006. Claimant's work accident occurred in 2005 after the 2005 amendments to the statute went into effect. The text of the statute as amended and as applicable to this case appears in the 2006 Supplement.

employees caused by accidents arising out of and in the course of the employee's employment. Section 287.120.1. An "accident" is an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by the specific event during a single work shift. Section 287.020.2 RSMo Supp.2006.[4] When the Worker's Compensation Law refers to an "injury," it means an injury arising out of and in the course of employment. Section 287.020.3(1). Section 287.020.3(1) further states that "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Finally, Section 287.020.3(1) defines "prevailing factor" as "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability."

Claimant argues that because the Commission found that he suffered some trauma to his right shoulder when his work accident occurred, the Commission was required to award compensation. He refers to evidence in the record indicating that, notwithstanding the injury he sustained to the same shoulder in 1993, he had no problems working and playing sports before the 2005 accident, but afterward was injured and unable to work. Based on this evidence, Claimant contends it is clear that the work accident aggravated his previous condition, rendering the injury compensable.

Case law preceding the 2005 amendments to the Worker's Compensation Law indeed permitted a claimant to recover benefits by establishing a direct causal link between job duties and an "aggravated condition." *See Rono v. Famous Barr*, 91 S.W.3d 688, 691 (Mo.App. E.D.2002). However, since *Rono* was decided, the legislature amended Section 287.020, changing the criteria for when an injury is compensable. In particular, the legislature struck out language stating that an injury is deemed to arise out of and in the course of employment where it is reasonably apparent that the "employment" is a "substantial" factor in causing the injury, "can be seen to have followed as a natural incident of the work" and "can be fairly traced to the employment as a proximate cause." *See* S.B. Nos. 1 & 130, section A 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005). Thus, while *Rono's* approval of compensation where the claimant establishes a causal link between his aggravated condition and his job duties fits within the former version of section 287.020, we review causation in light of a new statutory standard.

Under the current statute, a work injury "is compensable *only* if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3 (emphasis added). Further, Section 287.800 RSMo Supp.2006 requires this Court to strictly construe the provisions of the Worker's Compensation Law. Thus, we must limit our consideration of Claimant's claim for benefits to the standard contained in the current version of section 287.020.3. Specifically, we are to review whether Claimant established that his 2005 work accident was the prevailing factor in causing his need for rotator cuff surgery and post-surgery recovery. Therefore, because Claimant's argument that he is entitled to compensation is based on analysis under the former version of section 287.020, it has no merit.

■ Based on the standard contained in the current version of section 287.020, we find that the Commission's decision that Claimant's 2005 work accident was not the prevailing factor in causing his need for

4. All references to section 287.020 are to RSMo Supp.2006.

rotator cuff surgery and post-surgery recovery was supported by competent and substantial evidence. Dr. Lehman, Claimant's orthopedic surgeon, testified that after he observed first-hand the damage to Claimant's shoulder, he found no evidence of acute injury. He also concluded that the damage was long-term in nature. Dr. Lehman then specifically testified that the strain and inflammation Claimant experienced when he fell was not the prevailing factor in his need for surgery.

Dr. Poetz, who testified that the injury was the prevailing factor, was found to be less persuasive than Dr. Lehman because of his lack of expertise in the field of orthopedic surgery and his inability to reconcile Dr. Lehman's surgical findings with his opinion. In addition, as discussed below, Claimant did not offer any additional evidence to counter Dr. Lehman's conclusions with regard to medical causation other than his own testimony, which was not sufficient to discount Dr. Lehman's surgical findings. Based on the foregoing, Claimant's first point is denied.

### 2. The Commission Adequately Considered Claimant's Pre–Injury Activities and Abilities

In Claimant's second point, he argues that the Commission's decision was not supported by competent and substantial evidence and was against the weight of the evidence because it disregarded evidence as to his pre-injury activities and abilities. In doing so, Claimant complains that the Commission erroneously relied on Dr. Lehman's opinion over Dr. Poetz when Dr. Lehman did not investigate or evaluate his pre-injury activities and abilities. In addition, Claimant asserts that the Commission ignored his own testimony in reaching its conclusion even though he was not contradicted or impeached.

### a. Dr. Lehman's Opinion Was Based on Competent and Substantial Evidence

### and Was Not Against the Weight of the Evidence

■ As to the Commission's reliance on one expert's opinion over another expert's conflicting opinion, Claimant acknowledges that where opinions of medical experts are in conflict, the fact-finding body determines whose opinion is the most credible. *Townser v. First Data Corp.*, 215 S.W.3d 237, 242 (Mo.App. E.D.2007). But he contends that "[t]he Commission is free to believe whatever expert it chooses as long as each opinion is based on substantial and competent evidence." *Hulsey v. Hawthorne Restaurants, Inc.*, 239 S.W.3d 156, 162 (Mo.App. E.D.2007). Thus, we should only affirm the Commission's decision to accept one of two conflicting opinions if that decision is supported by substantial and competent evidence. *Townser*, 215 S.W.3d at 242.

■ According to Claimant, Dr. Lehman's opinion was not based on substantial or competent evidence because Dr. Lehman did not evaluate Claimant's history or utilize Claimant's history in his opinion. We disagree. First, the record indicates that Dr. Lehman did discuss Claimant's patient history at least to the extent it revealed his prior right shoulder injury. Second, Claimant cites no authority to support his argument that where a claimant's activity level changes after a work accident, the treating doctor must base his opinion of whether a claimant's work accident is the prevailing factor in causing the claimant's medical condition on such changes in his activity level.

■ Here, Dr. Lehman explained that although he initially believed that Claimant's need for rotator cuff surgery was based on Claimant's work accident, when he actually observed Claimant's rotator cuff tissue he discovered that it could not have been caused by an acute injury.

Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause. *Brundige v. Boehringer Ingelheim*, 812 S.W.2d 200, 202 (Mo.App. W.D. 1991). Claimant's only counter to Dr. Lehman's explanation of his condition is that his opinion "makes no sense" since he was able to perform labor intensive activities before his work accident and subsequent surgery. His theory that Dr. Lehman's opinion "makes no sense" is not, however, based on any scientific or medical evidence. Thus, Claimant's argument that Dr. Lehman's opinion was not based on substantial and competent evidence fails.

To the extent Claimant asserts that the Commission should have relied instead on Dr. Poetz, it was free to believe whichever expert it chose to believe. *See Hulsey*, 239 S.W.3d at 162. Even though Dr. Poetz concluded that Claimant's medical condition was caused by his work accident, the Commission noted that Dr. Poetz failed to explain how Dr. Lehman's arthroscopic finding of no acute injury could be reconciled with his conclusions. Dr. Poetz also acknowledged that he is not an orthopedic surgeon nor has he performed any surgery of the type Claimant underwent.

For these reasons, the Commission's decision to accept Dr. Lehman's opinion over that of Dr. Poetz is supported by competent and substantial evidence and is not against the overwhelming weight of the evidence.

**b. The Commission Did Not Disregard Claimant's Testimony**

Claimant finally argues that the Commission improperly disregarded his testimony about his activity level before and after the work accident even though it was not contradicted or impeached. He contends that because he now has difficulty performing activities he was able to perform prior to the work accident, he presented substantial and competent evidence to support Dr. Poetz's finding that the accident was a prevailing factor in causing a massive rotator cuff re-tear that required surgery.

Generally, the Commission may not arbitrarily disregard or ignore competent, substantial and undisputed evidence of a witness who has not been impeached. *Copeland v. Thurman Stout, Inc.*, 204 S.W.3d 737, 743 (Mo.App. S.D.2006). Further, the Commission may not base its findings on conjecture or their own personal opinion unsupported by sufficient competent evidence. *Id.* Here, there is no indication that the Commission arbitrarily disregarded or ignored Claimant's evidence. The ALJ's findings, as adopted by the Commission, summarized Claimant's testimony about his change in abilities. However, its finding that Claimant's need for surgery was not based on a massive rotator cuff re-tear but instead on a long-term condition that predated the injury was supported by evidence and could be reconciled with Claimant's testimony. Dr. Lehman acknowledged that Claimant strained his shoulder causing inflammation and pain. Claimant's need for surgery, though, was based on a lack of rotator cuff tissue. There is nothing in the record to suggest that the Commission arbitrarily disregarded or ignored Claimant's testimony. Claimant's second point is denied.

## III. CONCLUSION

The Commission's decision is affirmed.

KURT S. ODENWALD, P.J., and PATRICIA L. COHEN, J., concur.